UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL DAVIS,

    Claimant,

  v.

KILOLO KIJAKAZI,

    Defendant.

No. C 23-00526 WHA

**ORDER DENYING CLAIMANT'S MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this social security appeal, claimant contests the denial of benefits. For the reasons stated below, claimant's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**.

## STATEMENT

### 1. PROCEDURAL HISTORY.

Claimant Michael Davis applied for disability insurance benefits in February 2018, alleging a disability since October 2016 at sixty years old. Claimant was insured through December 31, 2021. Following administrative proceedings, an administrative law judge found claimant not disabled (AR 113–25). The Appeals Council reversed the decision and remanded claimant's case for a new hearing.

In November 2021, claimant had a new hearing before a new Administrative Law Judge, Raymond Rodgers. There, the ALJ also found claimant not disabled (AR 15–31). The Appeals Council affirmed. Claimant filed the instant action on June 20, 2023, seeking judicial review pursuant to 42 U.S.C. §405(g). The parties now make cross-motions for summary judgment. This order follows full briefing.

## 2. MEDICAL EVIDENCE.

In 2016, claimant's MRI exhibited multi-level degenerative disc disease with stenosis at C-5 and C-6 (AR 158). In 2017, consultative examiner Dr. Robert Wagner diagnosed claimant with diabetes and neuropathy to the ankles, thoracolumbar back and neck pain consistent with occasional musculoligamentous strain, and elevated liver function test and fatty liver (AR 2217–2223). In June 2019, Dr. Constance Lo diagnosed claimant with depression, diabetes and diabetic neuropathy, right shoulder pain and carpal tunnel syndrome (AR 2451). Additionally, x-rays showed degenerative disc disease of the lumbar and cervical spine. An MRI that year also showed tears of the shoulder (AR 2754). In November 2019, claimant underwent carpal tunnel release surgery and radial artery repair (AR 2644). In October 2020, claimant was examined at Santa Clara Valley Medical Center and was diagnosed with a mild mental impairment (AR 2546). Three additional physicians, Dr. A. Acenas, Dr. R. Solomon, and Dr. B. Rudnick provided medical opinions in the record and concluded that claimant had a mild mental impairment. This order will further address claimant's mild mental limitations in due course.

## 3. CLAIMANT'S TESTIMONY.

Claimant testified that he experienced pain in his back and neck, foot swelling, peripheral neuropathy, numbness and pain in his arms and hands that worsened with use of a computer (AR 48). He also testified that he had sleep apnea and would only sleep two to four hours each night (AR 49–50). Claimant stated that he was unable to perform his previous job due to his fatigue. Additionally, claimant testified to pain in his neck, spine, and neuropathy in his legs which causes problems when sitting down and using the computer for more than 40 minutes (AR 50–53).

**ANALYSIS**

## 1. LEGAL STANDARD.

A decision denying disability benefits must be upheld if it is supported by substantial evidence and free of legal error. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla, but less than a preponderance." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). This means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ibid*. The court must "review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion." *Andrews*, 53 F.3d at 1039. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities" thus, where the evidence is susceptible to more than one interpretation, the decision of the ALJ must be upheld.

The claimant bears the burden of proving disability. *Id.* at 1040. Disability claims are evaluated using a five-step inquiry. 20 C.F.R. § 404.1520. In the first four steps, the ALJ must determine: (i) whether the claimant is working; (ii) the medical severity and duration of the claimant's impairment; (iii) whether the disability meets any of those listed in Appendix 1, Subpart P, Regulations No. 4; and (iv) whether the claimant is capable of performing his or her previous job. If the ALJ finds that the claimant can do past work, then the claimant is not disabled, and the analysis stops here. Step five requires a determination of whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520(a)(4)(i)–(v). In this last step, "the burden shifts to the Commissioner to show that the claimant can engage in other types of substantial gainful work that exists in the national economy." *Andrews*, 53 F.3d at 1040.

**2. THE ALJ'S FIVE-STEP ANALYSIS.**

At step one, the ALJ found that claimant had not engaged in substantial gainful activity since October 9, 2016 (AR 21).

At step two, the ALJ determined that claimant's following impairments were severe: degenerative disc disease of cervical and lumbar spine; right shoulder supraspinatus and infraspinatus tears with degenerative changes of the acromioclavicular joint of the right

3

shoulder; carpal tunnel syndrome (CTS) status post carpal tunnel release on the right with repair of right radial sensory nerve branch and right radial artery; osteoarthritis in the left hip; trigger thumb of right hand; osteoarthritis in the left thumb, diabetes mellitus with neuropathy, and obesity.  The ALJ, however, found that claimant's medically determinable mental impairments of adjustment disorder, depression, and mild cognitive impairment were nonsevere (AR 21).

At step three, the ALJ found that claimant did not have an impairment or combination of impairments that met or were medically equivalent to any impairment that would warrant a finding of disability (AR 23).  *See* 20 C.F.R. Section 404, Subpart P, App. 1.

At step four, the ALJ found that claimant could perform past relevant work.

Because the ALJ determined that claimant was not disabled at step four, the ALJ did not need to proceed to step five.

### 3. THE ALJ DID NOT ERR IN FINDING CLAIMANT'S MENTAL IMPAIRMENT AS NONSEVERE.

Claimant argues that the ALJ erred at step two of his analysis by failing to review the entire record which allegedly showed symptoms of his severe mental impairment and its limitations.  This order affirms the ALJ's decision.

An impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1522(a).  The second step of the analysis is "a de minimis screening device used to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (internal quotation marks and citation omitted).  An ALJ can find an impairment or combination of impairments nonsevere "only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290.  The question here becomes "whether the ALJ had substantial evidence to find that the medical evidence clearly established" that claimant did not have a severe mental impairment.

4

The ALJ assessed claimant's mental limitations according to the "paragraph B" broad functional areas of mental functioning in the disability regulations and in "Listing of Impairments" 20 C.F.R. Section 404 Subpart P, Appendix 1. The "paragraph B" criteria assessed understanding, remembering, or applying information; interacting with others; ability to concentrate, persist, or maintain pace; and the ability to adapt or manage himself. The ALJ found that while there were limitations in all four areas, they were mild. For example, claimant alleged he had difficulty in remembering generally and completing tasks. Claimant's daily activities, however, showed that he could "perform simple maintenance, prepare meals, go to doctor's appointments, take medications, and shop" (AR 22). The record also showed that claimant could "provide information about his health, describe his prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers" (*ibid.*). Claimant also stated he had limitations in concentration, focus, and completing tasks. The ALJ, however, found that claimant was able to "prepare simple meals, watch TV, read, care for children, and handle his own medical care" (*ibid.*). Claimant's medically determinable mental impairments were nonsevere because the ALJ's analysis of the functional areas did not show more than mild limitations on claimant's ability to do basic work.

Additionally, the ALJ's review of the medical evidence also supported the conclusion that claimant's nonsevere mental impairments did not cause more than minimal limitations. To support this finding, the ALJ assessed the reports of psychiatric consultive examiner, Dr. Acenas, and psychiatrist consultants Dr. Solomon and Dr. Rudnick, whose findings all supported a diagnosis of nonsevere mental impairment and no more than mild limitations (AR 29). The ALJ also relied on the report of claimant's family physician, Dr. Wong, who diagnosed claimant with a mild mental impairment and claimant's mental status in examinations showed normal mood, affect, insight and judgement (AR 21).

Claimant argues that the ALJ failed to consider symptoms of claimant's mental impairments documented in Dr. Wong's evaluation. It is true that symptoms of claimant's mental impairments in Dr. Wong's evaluation were not mentioned by the ALJ, but this order finds that this is not enough to overturn the ALJ's decision. To be clear, the ALJ considered Dr. Wong's evaluation that diagnosed claimant with a mild cognitive impairment. Claimant's test results showed 29/30 on the Mini-Mental State Examination and 25/30 on the Montreal Cognitive Assessment and "there was no follow up neurological testing in the record" (AR 21). Dr. Wong's mild impairment diagnosis was consistent with the findings of Dr. Acenas, Dr. Solomon, and Dr. Rudnick (AR 21, 29). Further, claimant's daily activities such as sharing custody of his teenage children, socializing with friends, and performing regular household chores were also consistent with a nonsevere impairment (AR 21).

Claimant also argues that the ALJ's assertion that claimant did not have "specialized psychiatric treatment or mental health counseling during his alleged period of disability" is false and reflects a poor understanding of the record (AR 21). It is not false because the claimant has not undergone any specialized psychiatric treatment for his mental impairment. As noted above, the ALJ relied on several reports when considering claimant's treatment. This and other evidence in the record supports the ALJ's determination.

For these reasons, this order finds that there was substantial evidence to support the conclusion that claimant's work would not be precluded based on any mental limitations.

**4.     THE ALJ DID NOT ERR IN STEP FOUR.**

Claimant also claims that the ALJ erred at step four because the residual functional capacity (RFC) did not accurately capture all reaching and manipulative limitations that would have precluded his past relevant work. Again, this order affirms the ALJ's decision because there was substantial evidence in the record to support the ALJ's RFC determination.

Here, the ALJ determined the claimant's RFC based on the objective medical and opinion evidence in the record, as well as prior administrative medical findings (AR 25–29).

The ALJ found the examinations "largely within normal limits" and the medical findings were "reasonably accommodated" by the RFC (AR 28).

There is further support for the ALJ's decision found in claimant's treatment and activities in the record. Claimant had noted improvement in his hands following carpal tunnel release surgery (AR 27). Subsequent evaluations declined any further treatment (AR 2531, 2583, 2593, 2602). Claimant also sought treatment for his shoulder in December 2018 and subsequent evaluations showed he lifted weights up to thirty pounds for exercise (AR 2283). In light of these facts, this order finds that there is substantial evidence to support the RFC and that claimant could perform past relevant work.

### 5. THE ALJ DID NOT ERR BY REJECTING SYMPTOM TESTIMONY.

Claimant argues that the ALJ erred by rejecting claimant's testimony and failing to provide findings of the testimony's inconsistency with the record. An ALJ must engage in a two-step analysis when evaluating the credibility of a claimant's subjective symptom testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 752 F.3d 586, 591 (9th Cir. 2009)).

*First*, the ALJ must determine if there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ibid.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citation omitted).

*Second*, if there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (citation omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what

7

evidence undermines the claimant's complaints." *Berry*, 622 F.3d at 1234 (citation omitted). The ALJ can consider several factors including: (1) inconsistencies in the record concerning claimant's symptoms; (2) any unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) claimant's daily activities; and (4) observations of treating and examining physicians and other third parties. *See Smolen*, 80 F.3d at 1284. If there is substantial evidence in the record to support the ALJ's credibility determination, the district court may not "second-guess that decision." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (internal quotation marks and citation omitted).

At step one, the ALJ considered claimant's testimony regarding his spine, peripheral neuropathy, and carpal tunnel syndrome. The ALJ found that claimant's medically determinable impairments "could reasonably be expected to cause the alleged symptoms" (AR 26). However, claimant's subjective testimony as to the intensity, persistence, and limiting effects were not consistent with the medical evidence (*ibid.*). The ALJ noted that examining and treating sources typically observed examinations largely within normal limits such as "full 5/5 strength throughout the upper and lower extremities bilaterally including bilateral grip strength, clear speech, and no rotational nystagmus despite findings of tenderness, painful ROM in cervical extension, and decreased sensation to light touch in the left arm at times" (AR 28). Thus, the analysis proceeds to step two.

At step two, the ALJ gave specific, clear and convincing reasons for discounting claimant's statements. The ALJ found that the objective medical examinations in the record were "largely within normal limits, which does not support disabling limitations or the claimant's subjective complaints" (AR 27). For example, the ALJ assessed Dr. Wagner's examination and noted his overall normal clinical findings (AR 26). Treatment was also assessed when rejecting claimant's statements. The ALJ found that the record showed "some symptom improvement with treatment compliance" (AR 28). Specifically, the ALJ noted that in March 2020, claimant reported that he was not waking up at night due to his hand

numbness and much of his thumb, index, and middle finger numbness had subsided. On a following examination, claimant reported his hand was worsening but examination showed that claimant had full composite flexion and extension of all digits and made a full composite fist without issue. Further, the ALJ relied on Dr. Wong's evaluation that claimant was able to perform his daily activities independently (AR 26–29).

Claimant also alleges that the ALJ failed to consider claimant's testimony regarding the side effects of his medication. The ALJ is not required to prepare function-by-function analysis for medical conditions that ALJ found neither credible nor supported by record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Claimant testified to his fatigue and his belief that the fatigue was due to a combination of his medication and sleep apnea (AR. 60). However, there is no objective evidence or other evidence in the record that suggest claimant's medication caused additional limitations. In fact, the record shows that claimant denied side effects several times (AR 643, 676, 686). Other than claimant's statements, there is no support that claimant's medication side effects impacted his ability to work. Accordingly, this order finds that the ALJ did not err in disregarding claimant's allegations of side effects.

## CONCLUSION

For the foregoing reasons, claimant's motion for summary judgment is **DENIED** and defendant's cross-motion for summary judgment is **GRANTED**. Judgment shall be entered.

**IT IS SO ORDERED.**

Dated: February 8, 2024.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE